I wonder if the two attorneys who were going to orally argue would step up and identify yourselves for the record. Good morning. Michelle Oshman for, of Query and Heroes for Defendant Apollo v. Roszak, ADC, Illinois. Ms. Oshman, good morning.  Good morning, Your Honor. Scott Howey, HRW-IE, from Fretchley and Stauffer, on behalf of Planned Parenthood, Avalanche, and Pekin Insurance Company. At least one of you has been here before. I think you both have. Have you not? No, Your Honor. You have not. Is this your first time before this panel or your first time in the Illinois Appellate Court? Illinois Court. Oh, well, welcome to the Illinois Appellate Court. I think you'll find us more than... Baptism by fire. Well, I shouldn't say that. You never know what Justice Joseph Gordon is going to do on any given morning. But I think, Mr. Howey, you're part of the traveling road show, I think, with respect to Pekin Insurance. And I mean that in a very informative sense. Your briefing and your arguments in the past on insurance issues have been very enlightening for the Court. And I'm sure we'll be enlightened by this. They've all been before Hallmark. If, in fact, it will not, his vicarious liability will not be covered by that provision. Find me any kind of a liability that that language would cover. If I might, Your Honor, I think it's necessary first to clarify what we might call the minor premise of my argument. I know what the solution is, counsel. Because I want to be very clear on one thing. Because I believe you may have misinterpreted a portion of my argument. And that is that the portion that you're referring to is not in the alternative if there is vicarious liability. It is not a backup argument, if you will, even if vicarious liability is in the underlying complaint. It is an argument, rather, that there is no vicarious liability, even if the complaint is interpreted preliminarily the way that the Circuit Court did. And let me try to explain that a little bit further. And I hope that that will address the lengthier concerns that you raised. The Circuit Court interpreted the underlying complaint, in particular, Count 2, the premises liability count against Roszak, as alleging vicarious liability because it referred to action. Agents. Agents, exactly. Actions taken. Well, not only agents, servants and employees. And servants and employees as well. Now, is there any definition in the complaint itself between the exact relationship between the two parties? There is not. There isn't? There is not. Other than the fact that... One is doing work and the other is the general contractor. Roszak is the general contractor and Rockford was one of the subcontractors. Well, do they even identify them as a subcontractor in the complaint? Honestly, I would have to look at that again. I understand that... You see where I'm going? No, I see where he's going. Roszak has maintained that they are a subcontractor. Well, let's go back to the complaint. I don't care what they maintain. I mean, they're speculating just as you are to a certain extent. You're speculating about how far you can go outside of the four corners of the complaint to either find or deny coverage. And all I'm trying to do is draw you both back into the complaint as a basis for deciding whether or not there is a potential for coverage. Well, if there is no allegation that they are even subcontractor, then our argument is even stronger. But for the sake of argument, I'm willing to grant that they may be alleged to be a subcontractor. And if that's the case... Could they be some kind of other legal entity other than a subcontractor? Could they be a... Independent contract? An agent? Could they be an agent, possibly? The complaint doesn't say that. I know it doesn't. I know it doesn't. So the complaint is somewhat... The underlying complaint is somewhat ambiguous with respect to what they are, the two of them in relation to one another, what they are. I don't think it's ambiguous so much as it is silent. Silent, okay. Yeah, the question is, the question all hinges on Section 414 of the restatement, which provides two avenues for recovery. One is through the direct negligence of the contractor based on his own independent duties. And the other is based on the negligence of the subcontractor over whom the prime contractor retains sufficient control. And there are no allegations of that sort of control contained in the underlying complaint. There is no suggestion here anywhere in the complaint that the underlying complaint... But that's the issue. But the issue is, does the complaint have to do that? Or should we take this roller case to its limit and say that the fate, the coverage of the additional insurer ought not depend upon the skill or attention of the drafter of the underlying complaint as long as what he does say doesn't foreclose or rule out the possibility that there is this vicarious liability?  That's a good way of putting it, Your Honor. I agree. But there has to be some correspondence between what is alleged and what is covered. Certainly this complaint doesn't foreclose the possibility of criminal liability or of something entirely separate. Well, in the purposes of your duty to defend, does it have to? You seem to think that, you know, that underlying complaint has to be pledged with some kind of specificity which would trigger your duty to defend. Now, remember, we're not talking about potential liability here. We're talking about the traditional way a trial judge is supposed to look at the four corners of the complaint and then say, is there a potential for coverage in this particular case? I don't know how this case is going to develop. This complaint may be amended three or four times down the road. The character and the relationship of the parties may be further defined, which might even preclude the possibility that the restatement of torts isn't even applicable. Well, first of all, Your Honor. Also, that restatement of torts interpretation in the Cochran case, which happens to be a case that I authored, is challenged by Justice Diane Woods in the Seventh Circuit. She doesn't agree with me that there is that vicar. And there's been some other disputes with respect to the restatement of torts, but I'm sure you're thoroughly familiar with all of them. Some of them, Your Honor. But I might point out, in addressing a concern you just raised, I think that touches on some larger issues as well. The question that you specifically point at. Well, all I'm doing is mouthing, and not very well, the cases that go against your position, which talk about if there is an aura of imputed liability in the air, they have met their burden under your clause. Well, first of all, Your Honor, I would submit that the possibility that subsequent amended complaints might allege a covered claim is not a basis for coverage. I misspoke. What I'm talking about is somebody speculating as to how the litigation will develop as a result of the complaint. I understand that. That's all. And that's where we get our general and quite generous standard, for the plaintiff at least, with respect to your duty to defend. You're not supposed to speculate too deeply. Correct. You're supposed to decide whether or not, as the insurer, as having accepted a premium for covering additional insurance, you don't do it for free, the last time I looked, that if there is the possibility that this complaint will lead to litigation, where it would trigger your clause, then you defend. You can defend with a reservation of rights, and maybe down the road you're going to be proved to be right. But the prudent thing to do, perhaps, is to defend with a reservation of rights. Or file a deck action. But the yardstick by which that potential, that possibility, is measured is the four corners of the underlying complaint. And the potential has to be based on what's in that complaint. Not a hypothetical complaint that might have been filed. Not a foreseen potential complaint. Well, that's where the lines of case is split. In point of fact, you have two lines of cases. You have Mesco and Hallmark being one line. And you have the Pekin-Lieu case and the UPS case and the Hoffman Estates case going the other way. I think we can dispose of the Pekin-Casco case because it's distinguishable on the basis of the policy language. It doesn't use the word solely as the basis for imputing the liability. And so that case is... United Parcel went down primarily... Which is why I signed on UNESCO, but also signed off on... It's because there's a Fed in it. Precisely. That is the distinction. On UPS. Now, and you can distinguish this case from both of those, can't you? From both of, I'm sorry? Both United Parcel and UNESCO. You can distinguish this case as well. Not on any important ground or any meaningful... Well, there's no language in here about each, that defended in each of them in this case. Those particular words don't appear in this underlying complaint. And yet, as I recall, the majority opinion in UPS relied rather heavily on that language, did it not? It cited that language because that's what was in the complaint. It did not hold up that language as being a talisman that would be the basis, the distinction between a covered claim and not. Yeah, I suppose you're right. They certainly walked away from the idea of imputed liability, which Justice McNulty had referred to a decade earlier. Exactly. Justice McNulty, in fact, dissented in UPS on the same grounds. Yes. I know. It's a dissenting opinion that's not part of the law. But it is a dissent that's out there. Rita Beeney just reiterated what she had said in her majority opinion a decade earlier. That's correct. But we submit again. And now you're putting us on the spot. You want us to decide this case. But all you'd like us to do is to follow UPS. And yet the Supreme Court rejected the PLA and Hallmark, didn't it? It did. But this Court, and Hallmark, in fact, recognized the division between the two districts. So what you're really arguing is that if we can create more confusion here, maybe the Supreme Court will take one of these cases and tell us how to draft another insured clause that will survive these kinds of problems. I think, Your Honor, you can create less confusion. By following the line of authority that this district has already set forth in the UPS case and in the BU case, which are both peak and insurance cases involving this same endorsement, as well as the Hoffman Estates case from some years earlier, which used a substantially similar endorsement, also using the word solely. What if you added this to your clause of who isn't insured? Maybe that's the problem. Maybe the problem is that you need to amend this thing. What if I said this? Such person or organization is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured. Take a breath. And not for its own independent negligence alleged in the same complaint. I think semantically, rhetorically, that might be a little bit better. But legally, it's exactly the same. Because the word, I think, where we might... I've helped you out, though, haven't I? Pardon me? I've helped you out by adding alleged in the same complaint. I think you, I don't think so. I think because, well... You're going to stick to your draftsmanship, which has led to all of this litigation? Well, there's always ways to improve any sort of language. And I think insurance policies are no exception. That's language. This language is sufficient to do what it sets out to do, which is specifically to provide that it covers the negligence liability of its named insured, even if that negligence liability is legally transferable to some other party, to someone else. What it doesn't do is cover someone else's negligence. And that's what this underlying complaint does. I understand your position, but I think what they're saying when they refer to this particular what is an insured in these policies is under your interpretation as being illusory because they can't figure out a way they can ever get you to defend based on this language. Oh, I think they've figured out the way. The way is vicarious liability. And we acknowledge that this... But you're going to have to have some third-party plaintiff plead that with great specificity in order for it to survive. I'm surprised that, frankly, the issue is concentrated as between vicarious liability under respondeat superior type of reasoning and abandon what we used to apply back in the old days with respect to prime versus secondary. So that, for example, when there's an allegation that he failed to supervise, that the liability for failing to supervise is secondary to the negligence which got past him. That would make a lot of sense, you see, at that point. Except that that, of course, makes a lot of sense if you're not the carrier who's taking the brain. It was perhaps the reason that Justice McNulty stuck so tenaciously to the phrase imputed liability and avoided all of those magic words like respondeat superior and vicarious liability. Because if you say imputed liability, it's broad enough and admittedly vague enough that it may overcome the initial threshold problem of finding a duty to defend. Especially if it does not use the word solely, if it's not imputed solely as a result of the named insurance liability, which that was the case not solely in MCASCO, but it is that way here. What this policy does is to provide that that negligence liability, the coverage for that negligence liability, in effect travels with the liability as long as it's the named insurance liability. But if it's someone else's liability, in this case the additional insurer of Rosak's, that's when it doesn't cover it. The first count of the underlying complaint, the one titled negligence, specifically and expressly says that Rosak is negligent for these reasons. And, in fact, it says so in such an explicit manner that even the circuit court in this case didn't consider that a basis for coverage. But it didn't rule out, it didn't discuss, nor one way or another, it didn't preclude an amended complaint from coming in to allege retention of control so as to come in under 414's respondeat superior comment C or whatever it is. But more fundamentally, Your Honor, it didn't allow for that finding. There is nothing in the underlying complaint. It was precluded by not allowing for it in the first place. There is nothing. But the amendment, if it were made, would not be precluded by what is stated. And there's possibly some shreds of indications here of secondary liability, namely the fact that it's the same acts of negligence, and they also try to make something out of the fact that it does have these words agent or signs, which we would think ordinarily is restricted to the actual non-restatement 414 principal agent type of relationships, such as its employees or its business agents. There are allegations that Rockford is liable for its own negligence and premises liability. There are allegations that Roszak is liable for its own negligence and premises liability. What there is not here, and what precludes coverage, is that there is no allegation that Roszak is blameless and yet still liable for the negligence of someone else, specifically Rockford. Except that the reasoning, at least that Justice McNulty stuck with in Amesco, that I kind of let loose of. But that doesn't mean that Hallmark hasn't made its own impressions on me. You know, I'm not attempting to tell you that you're safe and secure with me either way on this issue. But in point of fact, you don't need more than the vacant opportunity in the pleading, according to the basic reasoning in Amesco. As long as it's not ruled out, it is for purposes of offering a defense ruled in. And with all due respect to Justice McNulty, that is a theory that has not survived, for example, the UPS decision in which she found herself in the minority on that same issue. UPS and BU and some of the other cases involving this and similar endorsements all stand for the proposition that you do have to allege something that is actually covered. It's not enough to simply put out a complaint that doesn't preclude the possibility of covering it. Because there are any number of theories that might not be precluded by what's in this underlying complaint. We're bound by what the allegations maintain. They're bound by what the underlying complaint alleges, because that's the way in which the insurance company and the courts and the litigants Let's have a look at this at its very basic and perhaps non-juridical level. Why doesn't the plaintiff's lawyer in the underlying tort action plead vicarious liability? It could be one of two reasons. Either he doesn't want the burden of showing retention of control and therefore won't plead it because he can't prove it and he doesn't want to have to make the effort. Or he's not that interested in the various theories of recovery because he's unaware of the fact that his deep pocket may escape him by virtue of his not being able to plead correctly. Now that's a Justice Gossner argument. Well, that is true, isn't it? What he just said. There may be any number of reasons why this wasn't pleaded. But you're then adding an additional burden on the law with respect to the duty to defend, that somehow the underlying third-party complaint can trigger or not trigger. The motives of the underlying third-party plaintiff can trigger or not trigger your right to a defense. Not at all, and I don't mean to suggest that those motives are relevant to the duty to defend issue. They're out there. I mean, there's a reason that the duty to defend is cast in such liberal terms vis-a-vis the plaintiff. Certainly. Certainly. It's because the presumptions of all that they hold. Because no court is going to try to imagine the various possibilities that can flow in litigation out of a complaint. And there isn't any need to speculate about what eventualities might come to pass because we have a bright-line test. But aren't you speculating when you say, by and through its agents, servants, its employees is not enough? Why? Because it's too vague? First of all, because first it doesn't identify who those agents and servants, servants, employees may be. And it doesn't suggest. There's nothing elsewhere in the complaint. But doesn't it suggest, at least you say, it doesn't identify who those agents, servants, and employees are. But isn't it safe to presume that Rockford may be one of them? Well, I'd like to put my two cents in on that one. Because I frankly don't think much of the vehicle of those two words as saving the day or saving the plaintiff's right to recover. Because I don't think that you could apply agents and employees to the 414 because it's not a pure agency kind of construct. It's a construct specifically developed in the restatement by analogy to having an agent-principal relationship. But I don't think that a subcontractor, regardless of how much control is retained, necessarily transforms into what the common law would call an agent. That's correct. And there certainly is no, even if the amount of control were relevant, there is no allegation of what sort of control there is here. There is only, there are two counts that seek to hold Roszak liable for its negligence, either by itself or through others, but still its own negligence, its own actions. And there are two counts that seek to hold Rockford, the name it should, liable for its own negligence. But there is no cross-pollination between those two theories. There is no suggestion that Roszak might be totally innocent of fault as a factual matter, and yet still legally liable, legally responsible for the negligence of anyone else, particularly in this case Rockford. And that is what is necessary under the, under the. Under UPS, certainly. Pardon me? Under UPS, certainly. I think I'd have to agree with you. And there's an important distinction to recognize between, even if you look to the premises liability count where agents are spoken of, there is an important distinction between an allegation that Roszak is responsible for the negligence of someone else. That would be vicarious liability. And what we have in this case, which is an allegation that Roszak committed negligence through someone else. Roszak is a limited liability company. It's a corporate entity that acts through others. Everything it does is actions through other parties. And so to say that it acted through someone else is not to say that it didn't act. But what about Justice McDulphy's suggestion in her dissent in UPS? She gives an example of how it could provide coverage. That example wouldn't develop until later based on the facts and discovery. Suppose UPS had provided a ladder that they knew to be defective. If that had been alleged in the complaint, then that case might have turned out differently. Well, no. Suppose it hadn't been alleged in the complaint. Suppose there was no explanation at all for what caused the ladder to break. But it didn't come out later until discovery. That, in fact, the reason the ladder broke was because UPS, in other words, a smoking gun develops not in the course of the complaint and the allegations in the complaint. All they allege is what they did allege, which you said, of course, in which the court agreed was not enough for imputed liability. But what if in the course of discovery more facts are revealed, which clearly may show that there was negligence or vicarious liability now as a cause of action that can be sustained and get by on a directed verdict? Well, that would take the underlying case in a different direction, certainly. And it might take the coverage case along sort of in its wake, if you will. But that would be But then if we rewind the film to the requirements that a judge is supposed to look at in terms of deciding whether or not you have a duty to defend, isn't it okay for the trial judge to speculate just in the way that Justice McNulty speculated in her dissent? To look into the future? To gaze into the future? Well, yeah. That would be speculation. I think that would be reasonable. What is the word potential, if not a look into the future? Thank you, Justice. But it is based upon what the underlying case, the underlying complaint contains. That's the only yardstick we have. That's the bright-line rule. To look into the future and to suggest that any number of possibilities might come to pass would be no standard at all. It would be a limitless standard. It would be the standard of imagination. Imagination is not the standard by which we govern the duty to defend. Imagination must strictly be limited, must be reined in by the particular document, the words on the paper, the black-and-white complaint. And that dictates the duty to defend. What is in this complaint does not suggest a possibility that under the allegations of this complaint, that if these allegations are approved, in fact, that is the potential at issue, I submit. So you would, for example, require some allegations as to retention of control, even though the theory espoused under that pleading would still be direct liability? That would be a step in the right direction. I can't say in the abstract whether that would be sufficient, but it would certainly be more than we have here. Here we simply have allegations that Roszak was negligent. If we end up agreeing with you, do we have to criticize Hallmark in our order or opinion? I think because it's judicial comity, you might simply elect to follow your own decisions, since Hallmark has criticized you or this district. But Hallmark, whether you agree with it or not, appears on its face to be a scholarly, well-thought-out opinion, whether right or wrong. But it makes the critical mistake of considering potential to be this limitless crystal ball imagination. Pretty much what I was babbling about just a few minutes ago. Not at all. I think you set forth the problem. And I think that you call it babbling. I call it more scholarly erudition. But whatever you call it, it sets forth what the problem is, that to look into the future at what complaints might later be filed, to look into one's own mind and speculate about what complaints might have been filed by a different plaintiff or by a different lawyer or under different circumstances that might not even be present, that's the sort of speculation that the notion of a potential doesn't begin to contemplate. Potential has to be measured by what's here. And potential, I submit, describes what potentially might be proved at trial. In this case, what might be proved at trial as to Roszak is that it was negligent, that it was at fault. Not, I submit, under this complaint, can it be proved that Roszak was utterly blameless, utterly innocent of fault, and yet still legally liable for Rockford's negligence. That would be vicarious liability. Why isn't it enough simply to recite that the additional insured is the prime contractor and the named insured is a sub? Why doesn't that create a sufficient framework to invite a potential analysis? Because that just sets forth the identities of the parties. It doesn't set forth enough of a relationship to suggest that, to even try to hold Roszak responsible for someone else's negligence. It is still doing only what the policy doesn't cover, which is to allege that Roszak is responsible for its own negligence. I'm sorry, that Roszak itself was negligent. Either it was negligent in what it did itself or it was negligent in what it did through others. But either way, it was negligent in what it did. And those are the only allegations as to Roszak's liability. It is not the fact that there are, that those allegations are there. Well, let me ask this. If the case went to trial on this pleading and the underlying tort action, would the plaintiff be precluded from introducing evidence of control? Would you be able to object that it's an invariance with the pleading? It would be irrelevant under the allegations of the pleading. There is no claim based upon control. There is no contention. Well, I mean, if there's a claim that you didn't supervise, that kind of invites evidence involving control because it's in that area. And supposing the evidence went beyond simply establishing a supervisory duty, but that there was, that this contractor, in addition to starting and stopping, controlled having the right to start and stop construction, controlled the manner in which the work was done. And that would be making the same mistake that the circuit court made in this case, Your Honor. It would be suggesting that because there are allegations that look a lot like vicarious liability, that this is vicarious liability. No, but the point of it would be that if the plaintiff could, in furthering the theory of the case he pled, introduce evidence that would also set up the other theory, that would then, if we still applied your four corners test, which is what you're espousing, we'd be cheating the prime contractor out of his potential recovery. Because there's nothing in there that will necessarily preclude the plaintiff from introducing evidence of sufficient control. Which might include something he got in discovery. For example, the blueprint in this particular case. In this particular case, suppose he discovered an instruction sheet prepared by Roszak as to how the truck should be unloaded. Then there would be a basis perhaps for amending the complaint. And that would raise anew the question. Would he have to amend the complaint in order to waive that document before the jury? Would he have to amend the complaint to waive that document in front of the jury and suppose in the course of discovery he asks for all documents germane and you give him a copy of the document prepared by your general foreman specifically outlining step by step how the truck is to be unloaded. Then that would be a basis for amending the complaint. Would it be a basis for introducing that document to evidence? It's unclear what the relevance of that document might be in the context of the case. It relates back to the argument that they alleged that you were negligent through your agents. But that would still be the negligence. The next question is, would, for example, the intervention of a statute of limitations prevent that additional evidence from relating back under 616 to the original claim? Maybe there's some place for that, for a look at that in the context of this. Well, not in the context of this case, because we only have the one complaint. Okay. We haven't traveled that path in the underlying case. I think we've exhausted you as much as we can. I mean, you have written a very able brief, counsel, and argued very ably. We'll give you a chance to respond, but we really need to hear from the other side, too. Thank you very much. If I may take just a moment to conclude. Yes, you may. This is, I submit, a situation of a simple question of whether there's vicarious liability or not. I think if we agree on anything, we agree that that's the question. The answer is that without some allegation that Roszak was legally liable, despite being factually blameless, there is no vicarious liability. Because there is no such allegation in this complaint, there is no basis for a duty to defend. I look forward to the rebuttal, Your Honor. Thank you very much. Okay. Thank you, Mr. Howey. Ms. Eichmann. I had a lovely outline all ready, but, Your Honors. No, go right ahead. Try not to interrupt. You just have to give us whatever we missed out on. I was just going to say, you missed very few points that I was going to make. So I think what we could talk about initially would be to continue our discussion about vicarious liability and whether the underlying complaint here supports that. And I think if you take a step back, you have to look at what Pekin is arguing in this case. They're arguing not that, they're basically arguing that unless you have an express allegation that the general contractor was the principal and the name insured was the agent, that you can't support vicarious liability here. And I think when you look at the complaint and when you apply the general principle of insurance coverage, which is that these allegations should be interpreted in favor of coverage and that the would-be insured should be given every benefit of the doubt, the actual allegations in this complaint do in fact support, would support a finding that Roszak was liable for the sole acts of negligence of the name insured Rockford. And just to get into what we were just talking about with the allegations of control, there absolutely are allegations that Roszak controlled the work at this site. There aren't allegations that they controlled specifically Rockford.  Absolutely, Your Honor. Both counts allege, for example, that Roszak, both counts against Roszak allege that it was in charge of erection and construction of the site. And then both counts, the negligence and the premises liability, assert that Roszak coordinated the work, designated the work methods, maintained and checked work progress, participated in scheduling and inspection of work, that Roszak had the authority to stop work, that it had the authority to refuse the work and materials, and had the authority to order changes in the work. Although those are three that have been held not to control, respond yet superior theory. There certainly, though, Your Honor, as far as controlling the methods of the work and other matters, that there are allegations that support a finding of control of the work. Let me throw you a softball. All right. On page this, you undoubtedly read Mr. Howey's yellow brief, which is beautifully written, I might add. There's a sentence on page 14, when he's discussing your argument that their coverage, if we're going to buy into his theory, is illusory. You have made that allegation. He says, when there are allegations that the additional insured is liable for someone else's acts or omissions, while blameless itself, the coverage is very real. But he seems to be saying, and I don't want to put words in his mouth, and he is going to have a chance to respond, which is why I brought it up, because I wouldn't dare do it if he didn't get another bite of the apple. He says the coverage could be very real, but there has to be some kind of allegation in the complaint that's blameless itself. That you can't have a complaint where a party is charging both of them with separate and disparate acts of negligence. With language of each of them. Right. Which seems to raise the specter of the fact that the additional insured, and now I'm throwing you the softball, is at the mercy of the third-party complaint. And unless there's an allegation of blamelessness in there, he has deprived you of your additional insured coverage. Is that basically what you're saying when you say it's illusory? Absolutely not. I think that our discussion of illusory was as to their argument that the acts of the agent are always going to be, by definition, the acts of the principal. But what did he mean when he said, well, blameless itself? It seems to indicate that he wants some kind of an allegation of blamelessness in there in order to trigger the paragraph. Well, I don't think, I mean the... That's what he's saying. Absolutely, Judge, but that's not what's necessary. I think that, Justice, it would be, it's certainly here, there are definitely allegations that ROSAC is liable through its agents. And there are separate allegations as to Rockford and to ROSAC. Okay. And when you construe those in favor of ROSAC as the additional insured, you would not have to argue sufficiently. It's like saying they're liable through their agents and not for themselves. That is not necessary in order to find that ROSAC would have agency liability as opposed to direct liability. Well, supposing this complaint would say, there is no vicarious liability here. It's only each party is liable because it's directly negligent. That would end it, wouldn't it? Or would there still be a case to be made against that language? That seems to be what Pekin would require here in order to, well, I guess it's the opposite. They would require that a specific allegation, oh, vicarious liability, whereas it's clear, as the Court stated in, I always say that wrong, Damasco, that you don't have to use specific allegations. That it's enough that such type of coverage is not precluded by the allegations, which it wouldn't be here. I mean, they're entitled to their own interpretation of the policy that they've written, aren't they? I mean, they're certainly entitled to make any argument. And to confine their insurance for additional insured in any way they please. Certainly, but that's not how they defined it here. They defined it as having to arise from the, basically, as we've been talking about. Their interpretation is obviously much more narrow than yours. Absolutely. But it's certainly, to a certain extent, supported by the language they chose to use in drafting the clause. In one sense, we're not challenging their language and even their interpretation of their language with regard to their duty to indemnify. What we're bringing to their language is Maryland versus Peppers. I knew Peppers was going to come back. Which says that their language is going to be controlling for purposes of indemnity, but it won't preclude a duty to defend as long as there is the potential of pleading within their language. Absolutely, Justice. It's bedrock coverage law that the duty to defend. Well, I wish it were bedrock, but when we look at the panoply of cases on this specific point over the last decade, it's hardly bedrock. And if it is bedrock, it's shifting, shifting sands. It's a very mushy bedrock. I'll have to defer on your broader knowledge. Well, I mean, you're certainly not going to argue that UPS and, what's another? I just slipped out of my head. The other first district case were wisely reasoned. Blue? Blue. Well, I think that they can be distinguished here. Well, I think they can, too, but with great effort. I think that the reason that they're distinguishable is the reason that the Damasco case is so helpful. Well, I don't think your fortune lies in distinguishing blue and UPS. I think it lies in adopting Hallmark in contravention to these other cases. As a matter of policy. And that's where this case ultimately rests, between these two lines of cases. And I think it's going to need a Supreme Court decision eventually, whichever way we see it. It's starting to sound like that. You think this job is easy, huh? This job is not that easy. There's nothing particularly special about these facts that would eliminate the impact of blue and UPS if we were to follow. Right. It would be easy. Well, not easy. But it would be possible to rule in your favor distinguishing the other two first district cases upon which he so heavily relies. But we find ourselves in doing that. That just puts us on the treadmill. One more exception to the general rule without giving either the insured or the insurer any kind of definitive answer to how you handle this problem. When you are both a victim of the third party complaint. And they're not going to pay any attention to that. They could care less. That's the third party plaintiff in this particular case who has sued Roszak and Rockford and everybody else in sight except her own employer. She doesn't care as long as she gets every pocket available into the lawsuit. I think what the trial court did here was look at the complaint as opposed to the third party complaint. Right. And found based upon the court's ruling in Amasco that it's not necessary to specifically allege that Roszak is, that Rockford was Roszak's agent or specifically allege vicarious liability. And further found that the allegations of agency and other allegations in the complaint fulfilled the requirement that there's a possibility of coverage. And I think that the court very eloquently stated in its ruling that adopting Pekin's position in this case, that you have to have these specific allegations of agency, and this is a quote, runs counter to the notion that it is only the possibility as opposed to the certainty of the existence of a covered claim that triggers the due process. As you know, this is on a motion for summary judgment, right? Yes. So we don't really care what the trial judge said or why she said it, do we? Well, we don't have to. I just thought she said it well and it was worth repeating. Well, I know, but we probably wouldn't repeat it even if we agreed with her because our review has nothing to do with what she said. For the record, I think the world of Judge Mason, I think she's got gift, frankly, with a chance of revenge, but that doesn't mean I agree with her. Your Honor, so just in closing, unless you have further arguments, I'd like to point out that Pekin's argument here does really overlook the idea that the threshold for pleading a duty to defend is low and that any doubt with regard to a duty to defend goes to the additional insured. And when the allegations are looked at with those precepts in mind, the underlying complaint would support a claim for vicarious liability and thus would satisfy the additional insured provision. And the trial court's ruling should be affirmed on that point. Thank you for your time. Ms. Oshman, thank you very much. Enjoyed both arguments. Yes. Mr. Howey, a final word. Oh, yes. I'll take it back. Before I say I enjoyed it, I want to hear what you have to say. I hope you'll enjoy this as much as the others. If I might, there's three brief points I'd like to make as quickly as possible, subject to any questions Your Honors might have. One is that in contradiction to what Ms. Oshman inadvertently, I think, spoke, her description of the premises liability count in the underlying complaint does not say that Roszak was liable through the negligence of its agents, servants, and employees. It says that the defendant in that count, Roszak, acted through its agents, servants, and employees. That's an important distinction, especially because the count then goes on after stating all the ways in which it acted through those unidentified parties. In paragraph nine, that is a direct and proximate result of the negligence of the defendant. The plaintiff was struck by a load of structural steel. And the antecedent for defendant was? Roszak. The only defendant, in fact, at that point who had been named in this complaint. So that is further demonstration that this is an allegation that the defendant, Roszak, was negligent through others, certainly, but that it was negligent and that these acts were its actions through its agents, servants, and employees, and whatnot. The second point I'd like to make is to address Justice Gordon's observation, his attempt to characterize my argument, if you will, that the underlying complaint has to allege vicarious liability. And I want to be very clear about one thing. We're not suggesting that the complaint has to expressly use the phrase vicarious liability. It has to allege the elements that would establish vicarious liability. It does. That's what you're arguing. Nor does it have to specifically allege blamelessness. But it needs to allow for that possibility. It needs to say that Roszak is somehow liable for this injury, despite having done nothing wrong itself. It must provide a context, a forum, for the plaintiff's counsel in the underlying case to say to the jury, we have no quarrel with anything Roszak did, and yet you can still find them liable, because they have the necessary relationship of control or because there is a contractual relationship or whatever it might be. But there is no forum. You never have to allege a theory, because Illinois is still a fact-proven state. That's correct. But there have to be facts that would support that theory. And here, there are no such facts. And finally, if I might take a moment to address the decision and particularly the language in the MCASCO decision. And I said before, with all due respect to Justice McNulty, I believe that the language that was used, that she chose to use in her opinion in that case, was inadvertently broad. I think to suggest that the- Inadvertently or deliberately? I believe it to be inadvertently, Your Honor. Justice McNulty was a very careful writer. I wouldn't say that. Her particular, she was a very bright woman, but her particular area of expertise was in insurance law. London Underwriters is her case. Various other landmark insurance cases are hers. And I have nothing but respect for Justice McNulty and her ability to write. But I think that the language that she chose to use about the complaint, about the potential for a complaint alleging something, has been misconstrued in the years since that decision was released. In particular, the UPS decision, on a panel that she sat on and found herself in the minority on, recognized that potential means something other than the limitless possibilities that the universe holds. How close she came to being the majority? It sounds like I do now. But in any event, the language that she chose to use, the reference to potential, I think has a place in the law, but this is the time to rein it in and to hold clearly as a matter of law that potential refers to what can potentially be proved within the four corners of the complaint. That is consistent with decades of coverage law. That is consistent with the intention of the policy. And it is consistent with the obligations that an insurer, with the way in which an insurer determines what its obligations might be. It provides a yardstick. It provides a bright line. It lets this court and other courts, circuit courts and insurance companies, determine what it is they have a duty to defend by showing them the allegations of the complaint and determining whether those allegations provide a basis, in this case, for vicarious liability. Well, it also helps you and all insurers by giving you some confidence with respect to the language you put in your policy for additional insurance. Indeed, it does. And it provides the same sort of confidence to insurers when they purchase those policies. They know what they're getting. They know what they're getting rather than a standard that is no standard at all, the universal standard of imagination that doesn't provide any guidance whatsoever. The guidance is what's contained in the underlying complaint. Thank you, Mr. Howey. And thank you, Ms. Ashman. The case was very well briefed. I restate that it was very well briefed. And it's a very, well, as you both know, it's a very interesting case because of the split in authority between this district and the second.